IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Scratch Golf, LLC, | C/A No.: 9:20-01962-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Beaufort County and Beaufort County Council, | |
| Defendants. | |

Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint. (Dkt. No. 52.) For the reasons set forth below, the motion is granted.

**I.     Background**

Plaintiff Scratch Golf, LLC owns real property in Beaufort County commonly known as the Hilton Head National Golf Club. The property is an approximately 300-acre parcel, 280 acres of which are currently zoned T2R Rural and 20 acres of which are zoned C5 Regional Center Mixed-Use. The property's current use is as a golf course, but Plaintiff is in the process of constructing a RV resort on part of the property. (Dkt. No. 51 ¶ 5.)

Defendant Beaufort County "is a political and governmental subdivision . . . responsible for the County's land use decisions. Defendant Council serves as the legislative authority for the County." (*Id*. ¶ 6.) In 2009, Beaufort County conducted a taking of a portion of the property in order to build onto the nearby Bluffton Parkway, which had the effect of reducing the golf course from 27 to 18 holes and altering its character. (*Id*. ¶¶ 52, 55.) These changes made the golf course less profitable and less suitable for golf course use. (*Id*. ¶ 57.)

Therefore, in 2012, Plaintiff's architect began work on conceptual site planning with "input and feedback of County officials and Planning Department staff[.]' (*Id.* ¶¶ 62-63.) In May 2013, Plaintiff and its architect presented the Planning Commission with a proposal to rezone to commercial regional and urban zoning in a Planned Unit Development ("PUD") zoning designation. (*Id.* ¶¶ 65-66.) In July 2013, Plaintiff's architect submitted the PUD application to the Planning Division. (*Id.* ¶ 68.) In September 2013, the Planning Commission recommended that Plaintiff's PUD application be denied and so Plaintiff withdrew the application. (*Id.* ¶ 80.) Plaintiff spent time and money to conduct an economic analysis recommended by the County. (*Id.* ¶ 83.)

In 2016, Plaintiff submitted to the County its rezoning application. (*Id.* ¶ 89.) The Planning Commission met and reviewed the application in September 2016 and deferred it to a later meeting. (*Id.* ¶¶ 98-99.) In November 2016, Plaintiff submitted a revised rezoning application. (*Id.* ¶ 101.) In December 2016, the Planning Commission reviewed it and voted to recommend it be approved. (*Id.* ¶¶ 103-04.) Later that month, the Natural Resources Committee considered the revised application and voted, except for one member,[1] to forward it to the Beaufort County Council and recommend approval. (*Id.* ¶¶ 107-08.) The application was placed on the County Council's January 9, 2017 meeting agenda. (*Id.* ¶ 144.)

A public hearing was held on the application and the majority of the speakers were against it. (*Id.* ¶ 148.) The National Resources Committee established a subcommittee to negotiate a development agreement with Plaintiff. (*Id.* ¶¶ 153, 155.) Plaintiff alleges that the subcommittee

---

[1] Although both the original and amended complaint contain numerous allegations that this member's actions were improper in various respects, *see, e.g.*, (Dkt. No. 51 ¶¶ 206, 209, 217, 227), he is not named as a Defendant in the amended complaint.

abrogated Plaintiff's due process rights by failing to provide it notice of public hearings or of its own discussions. (*Id*. ¶ 162.)

In May 2017, the County Council put the revised application on its agenda. Plaintiff alleges that the County attorney informed Plaintiff that Plaintiff would not be permitted to address the Council at the meeting. Plaintiff also alleges that it was not provided an opportunity to present its revised plan or to refute false information prior to the meeting. (*Id*. ¶¶ 205, 207.) After various statements were made at the hearing, the County Council voted to deny the National Resource Commission's recommendation that the application be approved. (*Id*. ¶ 254.) The County Council then voted to deny Plaintiff's revised rezoning application. (*Id.* ¶ 256.)

On June 17, 2021, Defendants moved for a judgment on the pleadings as to Plaintiff's original complaint. (Dkt. No. 27.) On July 29, 2021, Plaintiff filed a response in opposition. (Dkt. No. 36.) Therein, in addition to opposing Defendants' motion on the merits, Plaintiff moved for leave to amend its claims brought pursuant to § 1983. On August 19, 2021, the Court granted Plaintiff leave to file an amended complaint and permitted Defendants to renew or file an amended motion within 15 days of the filing of the amended complaint. (Dkt. No. 46.).

On September 3, 2021, Plaintiff filed an amended complaint. (Dkt. No. 51.)

On September 17, 2021, Defendants filed a motion to dismiss Plaintiff's amended complaint. (Dkt. No. 52.) Plaintiff opposes Defendants' motion. (Dkt. No. 53.)

Defendants' motion to dismiss Plaintiff's amended complaint is fully briefed and ripe for disposition.

**II.     Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." A claim survives the

motion if the complaint provides enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is a test of the legal sufficiency of the complaint and, therefore, Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Instead, the district court's "inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. (internal quotation marks and citation omitted). For that analysis, the district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

**III.    Discussion**

Plaintiff brings six causes of action against the Beaufort County Council and Beaufort County: (1) violation of substantive due process; (2) violation of procedural due process; (3) requests for declaratory judgments; (4) violation of the equal protection clause; (5) regulatory taking; and (6) estoppel. (Dkt. No. 51 at 46-59.)

**A.    The First, Second and Fourth Causes of Action Brought Pursuant to 42 U.S.C. § 1983**

As an initial matter, § 1983 allows suit against a "person" who acts under color of law to violate a federally secured right. A municipality is a "person" subject to suit under § 1983 that may be held liable only if the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 296 (4th Cir. 1995)

4

(quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 659 (1978)).   The Beaufort County Council is not a municipality.  Instead, as the pleading alleges, the Beaufort County Council is a legislative body that "serves as the legislative authority for the County." (Dkt. No. 51 ¶ 6.)   Nevertheless, Courts have allowed § 1983 deprivation of due process claims to proceed against a Council. *See, e.g.*, *Marks v. City of Chesapeake, Va.*, 883 F.2d 308 (4th Cir. 1989).

But the amended pleading fails to sufficiently allege the elements of a § 1983 claim under *Monell*; specifically, that the unconstitutional conduct was pursuant to a "policy or custom" of Defendants that was the "moving force behind the particular constitutional violation*." Spell v. McDaniel*, 824 F.2d 1380, 1385-87 (4th Cir. 1987); *see also Waters v. City of Chicago*, 580 F.3d 575, (7th Cir. 2009) ("Misbehaving employees are responsible for their own conduct; units of local government are responsible only for their policies rather than misconduct by their workers.") (citation omitted). In the amended complaint, Plaintiff repeatedly alleges what it purports is a "non-exhaustive list of the County's policies, procedures, practices and customs that inflicted harm on Plaintiff." (Dkt. No. 51 ¶¶ 2, 259, 270, 283.)  Assuming Plaintiff properly articulated "policies" or "customs" under *Monell*, Plaintiff nonetheless fails to allege how these policies or customs—as opposed to, for example, the actions of the council member noted above—were the moving force behind the constitutional violation, namely the denial of Plaintiff's revised rezoning application. *See Red Zone 12 LLC v. City of Columbus*, 758 Fed. App'x 508, 516 (6th Cir. 2019) (affirming judgment on the pleadings to defendant city and finding defendant did not act pursuant to a custom or policy when bringing a nuisance action against plaintiff. Plaintiff argued that a public website containing a redevelopment plan was indicative of the city's policy or custom of bringing improper nuisance abatements. The court rejected the argument noting it "*proves too much. Many cities have*

*redevelopment plans. Without more, the simple existence of a redevelopment plan does not indicate a custom of constitutional violations*") (emphasis added); (Dkt. No. 51 ¶ 259) (alleging that Defendants "adoption, implementation, and administration of the County's Comprehensive Plan" "inflicted harm on Plaintiff"). In sum, Plaintiff's amended complaint appears to "allege[] that [Plaintiff's] rights were violated by [Defendants] in *violation* of the city's official policies," but not that "a[] city policy or custom . . . *caused* a violation of [Plaintiff's constitutional] rights." *James v. Benjamin*, No. 3:17-491-MBS-PJG, 2019 U.S. Dist. LEXIS 228971, at *20 (D.S.C. Dec. 10, 2019) (second emphasis added); (Dkt. No. 51 ¶ 262) ("Defendants' failure and refusal to comply with its own carefully crafted and adopted Comprehensive Plan and CDC, and South Carolina law regarding its own procedures . . . constitutes an invalid exercise of Defendants' police powers and an abuse of power under color of law[.]"); *Red Zone 12 LLC*, 758 Fed. App'x at 516 ("Counterintuitively, Red Zone also argues that the City is liable under § 1983 because '[t]he city's policy of contacting and working with business and property owners to resolve any alleged nuisance was never utilized.' But this argument cuts against the heart of a § 1983 claim—that official policy or custom was the 'moving force' behind the constitutional violation. If this case was an aberration from normal City policy, as Red Zone contends that it was, then this is precisely the type of claim for which § 1983 was not intended."). Thus, even construing Plaintiff's allegations and their reasonable inferences in its favor, the amended complaint does not allege that Beaufort County denied Plaintiff's Revised Rezoning Application pursuant to a particular policy or custom.

Next, relating to the first cause of action for violation of substantive due process and to the second cause of action for violation of procedural due process, the amended complaint fails to sufficiently allege that Plaintiff had a property right that it was denied without due process. At

bottom, Plaintiff alleges that Defendants denied its right to rezone the property without due process. "To establish a violation of substantive due process, plaintiff[] must demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental authority that no process could cure the deficiency." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). "In the context of a zoning dispute, to state a claim under the fourteenth amendment for deprivation of 'property' without due process of law, a person must establish that he had a valid 'property interest' in some benefit that was protectable under the fourteenth amendment at the time he was deprived of the benefit." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) (citing *Board of Regents v. Roth*, 408 U.S. 564, 576-77 (1972)). And to determine whether a property interest in some benefit rises to the level of a right protectible under the Fourteenth Amendment, courts must look to "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. Similarly, to "establish a violation of procedural due process, plaintiff[] must show that (1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law." *Sunrise Corp. of Myrtle Beach*, 420 F.3d at 328.

Under South Carolina law, a real property owner does not generally have a property interest in a potential future rezoning. *See, e.g.*, *Harbit v. City of Charleston*, 675 S.E.2d 776, 782 (S.C. Ct. App. 2009) (affirming summary judgment in favor of City of Charleston where plaintiff applied for rezoning of property based on its location within the Savannah Highway Overlay Zone where plaintiff had sufficient notice and no prior property interest in the rezoning). In South Carolina, rezoning is a legislative matter and the legislative body's decision in zoning matters is

7

presumptively valid unless the property owner meets his burden of proving the contrary. *Id*. at 780-81. Because the authority of a municipality to enact zoning is founded in its police power, and because the municipality has better qualified knowledge of the situation than do the courts, its "decisions will not be interfered with unless there is a plain violation of the constitutional rights of citizens." *Id*. at 780. Similarly, there is a strong presumption in favor of the validity of municipal zoning, and therefore "when the planning commission and the city council of a municipality have acted after reviewing all the facts, the court should not disturb the finding unless such action is arbitrary, unreasonable, or in clear abuse of its discretion, or unless it has acted illegally and in excess of its lawfully delegated authority." *Id*. Against the context of this governing law, the pleading makes no mention of a state law or an existing rule or understanding from which Plaintiff drew a property interest in the rezoning. Rather, regarding a "property interest," the amended complaint simply alleges:

> Defendants' deprivation of Plaintiff's property interest constitutes a deliberate flouting of the CDC [Beaufort County Community Development Code] and the Comprehensive Plan in order to satisfy unfounded vocal opposition to the development of the Property and thus, constitutes egregious governmental misconduct and a grave unfairness to Plaintiff for arbitrary political reasons.

(Dkt. No. 51 ¶ 268.) Construing the pleading in a light most favorable to Plaintiff, it does not reflect a material issue of fact as to whether Plaintiff had a vested property interest in the rezoning that was denied it without due process.

Regarding the fourth cause of action for violation of the equal protection clause, Plaintiff alleges that Defendants "have a duty to enact and enforce land use regulations and corresponding zoning laws without discrimination," but by "failing and refusing to act in accordance with its own carefully crafted and adopted Comprehensive Plan, CDC, the Economic Report, upon which Plaintiff is informed and believes the CDC was based in part, and United States and South Carolina

law, Defendants have unconstitutionally singled out Plaintiff and the other persons and entities who own undeveloped property with like characteristics[.]" (Dkt. No. 51 ¶¶ 286-87.)

To successfully plead an equal protection claim, a plaintiff must allege that it was treated differently from another similarly situated and "'that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injury a person.'" *Baker v. McCall*, 842 F. Supp. 2d 938, 950 (W.D. Va. 2012) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.2d 12, 17 (2d Cir. 1999)). The Supreme Court has also recognized the validity of "class of one" equal protection claims, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Pulte Home Corp. v. Montgomery County, Maryland*, 909 F.3d 685, 695 (4th Cir. 2008). Courts "approach[ ] class-of-one claims with caution," however, particularly where a decision "involves a great deal of discretion," because of the danger of turning all government decisions into constitutional causes of action. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (noting courts must afford officials such as "police officers, IRS agents, university administrators, zoning officials, and other, similar government actors" latitude in decision making or "government action would be paralyzed"); *see also United States v. Moore*, 543 F.3d 891, 900 (7th Cir. 2008) (observing a "class-of-one equal protection theory is a 'poor fit' where the challenged governmental action is the product of a broadly discretionary decision-making process."). When a plaintiff challenges a zoning determination, "the zoning authorities' decision must be upheld against equal protection challenge if there is any conceivable state of facts that could provide a rational basis for the classification." *Pulte Home Corp.*, 909 F.3d at 693 (internal quotation marks omitted). "The test is not a subjective

one" and the "'actual motivation for the [local government's] actions [is] irrelevant.'" *Id.* (citing *Tri-Cty. Paving, Inc. v. Ashe Cty.*, 281 F.3d 430, 439 (4th Cir. 2002)). Here, Plaintiff alleges that Defendants rejected its rezoning application "for adverse treatment and purposeful discrimination based on illegitimate political and personal motives[.]" (Dkt. No. 51 ¶ 287.)

Having reviewed the substance of the pleading's factual allegations, however, the Court can decipher no impermissible consideration on which Defendants relied to deny the rezoning application. Nor does the Court find that "[Plaintiff has] . . . carried its 'heavy burden of negating every conceivable basis which might reasonably support the challenged classification.'" *Pulte Home Corp.*, 909 F.3d at 695 (affirming grant of judgment on the pleadings to defendant county where plaintiff challenged an amendment to a zoning plan but said amendment "reveal[ed] a[] rational reason for its adoption . . . *even if [the] purported rationale was not the actual motivation behind it*") (emphasis added).[2] For example, the amended complaint itself provides various rational reasons for the Defendants' vote denying Plaintiff's revised rezoning application. (Dkt. No. 51-20 at 7, 10) (Defendant meeting minutes from May 22, 2017, noting the subcommittee recommended not entering into a development agreement with Plaintiff because, *inter alia*, the "application did not address a demonstrated community need" and was "unreasonable in size, scope and magnitude"); (Dkt. No. 51-16 at 1) (March 23, 2017 subcommittee email chain discussing issues related to density and noting "[W]e have to ask what the cumulative effect is of

---

[2] *See Pulte Home Corp. v. Montgomery Cty.*, 909 F.3d 685, 694 (4th Cir. 2018) ("The Amendment articulates in detail environmental concerns that are specific to Pulte's property and gives reasons for imposing a low impervious cap and a high open space requirement on Pulte's land alone. Pulte's disagreement with those reasons and the science underlying them does not give rise to an equal protection claim.").

all these various developments, regardless of whether or not their density/intensity is consistent when we compare them. There's still a cumulative effect"); *Pulte Home Corp.*, 909 F.3d at 693 (ordinarily zoning decisions are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data") (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).[3]  Accordingly, the Court finds Plaintiff's equal protection claim fails as a matter of law.

### B. The Third Cause of Action for Declaratory Judgments

In the pleading, Plaintiff seeks declaratory judgments that turn on whether Defendants "unjustly deprived Plaintiff of its property rights." (Dkt. No. 51 ¶ 280.)  This cause of action does not survive Defendants' motion to dismiss because, as discussed, the pleading fails to establish that Plaintiff had a vested property right in the rezoning.

### C. The Fifth Cause of Action for Regulatory Takings

The Fifth Amendment prohibits the taking of private property without just compensation. Such deprivation of the economic use of a property may constitute a regulatory taking, and it has long been recognized that property regulations with aggressive reach may take a landowner's property. *See Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).  "Where a regulation causes a physical invasion of an owner's land or *deprives the land of all economic value*, the landowner must be compensated." *Henry v. Jefferson Cty. Comm'n*, 637 F.3d 269, 276 (4th Cir. 2011)

---

[3] The Fourth Circuit has cautioned that it is not this court's role to "second-guess the wisdom of elected local officials in making inherently discretionary zoning decisions." *Id.* at 694 (citing *Enquist v. Or. Dept. of Agric.*, 553 U.S. 591, 603 (2008) ("There are some forms of state action, however, which by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.")).

(emphasis supplied). But the regulation must rise to the level of generating a constitutional injury, because the regulatory takings doctrine seeks to "identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005).

Here, the pleading does not allege that Plaintiff was deprived of all economic value of the property for which it sought rezoning; rather, the pleading alleges that "Defendants' failure and refusal to properly apply the Comprehensive Plan and the CDC to Plaintiff's Revised Rezoning Application both on its face and as applied to Plaintiff, goes too far and *devalues* Plaintiff's Property to such an extent that it amounts to taking by eminent domain without just compensation[.]" (Dkt. No. 51 ¶ 304) (emphasis supplied). And the Fourth Circuit is "reluctant to push the notion that the denial of a permit in which one has no property interest can somehow amount to an unconstitutional taking." *Henry v. Jefferson Cty. Comm'n*, 637 F.3d 269, 276 (4th Cir. 2011) ("The Planning Commission's action on Henry's CUP request never subjected the property to physical invasion, nor did it eliminate the property's value."). While the pleading alleges that Defendants' zoning decision impacted the economic value of the property, it does not sufficiently allege that the decisions "visited economic harm approaching constitutional magnitude." *Id*.

**D.    Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claim**

Having dismissed Plaintiff's federal claims, only Plaintiff's state law claim for estoppel remains.

The Court declines to exercise jurisdiction over this state law claim. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "[T]rial courts enjoy wide latitude" in determining whether to exercise supplemental jurisdiction. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In making that determination, the district court "should undergo a flexible balancing analysis in which it 'should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity.'" *Salim v. Dahlberg*, 170 F. Supp. 3d 897, 907 (E.D. Va. 2016) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having carefully considered these factors, and in light of the federal question claims being dismissed, the Court declines to exercise jurisdiction over this claim.

### IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss the amended complaint (Dkt. No. 52) is **GRANTED**. All other pending motions are denied as moot. The Clerk is directed to close this action.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

October 12, 2021
Charleston, South Carolina